NO. 23-13554

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

MARCIA McMANUS,

Plaintiff/Appellant,

v.

AMERIJET INTERNATIONAL, INC.,

Defendant/Appellee.

On Appeal from a Final Judgment of the United States
District Court for the Southern District of Florida (The Hon. Darrin P. Gayles)

District Court Case No. 0:21-cv-61617-DPG

_____

**DEFENDANT/APPELLEE'S BRIEF**

_____

Paul Crucet
Robert S. Turk
**STEARNS WEAVER MILLER**
Museum Tower
150 West Flagler Street
Suite 2200
Miami, Florida 33130
Telephone: (305) 789-3200
Email: pcrucet@stearnsweaver.com
Email: rturk@stearnsweaver.com
*Attorneys for Defendants-Appellees*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Under Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1, counsel for Amerijet International, Inc. hereby certifies that, to the best of its knowledge, information, and belief, the following is an alphabetical list of trial judges, attorneys, persons, associations of persons, firms, partnerships, and corporations, including subsidiaries, conglomerates, affiliates, parent corporations, and all other identifiable legal entities related to a party known to have an actual or potential interest in the outcome of this appeal:

Amerijet International, Inc. - No publicly held corporation owns 10% or more of Amerijet International, Inc.'s stock.

Bushell, Daniel A.

Bushell Law, P.A.

Crucet, Paul

Elkins, Michael

Entin, Joshua M.

Entin Law Group, P.A.

Gayles, Hon. Darrin P., U.S. District Judge

McManus, Marcia

MLE Law

Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.

Strauss, Hon. Jared M., U.S. Magistrate Judge

Turk, Robert S.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not necessary because this case does not involve a novel issue of law, to wit, whether to state a claim for discrimination under Title VII, the plaintiff must allege facts sufficient to establish the existence of a sufficiently similarly situated employee "comparator" who is not a member of the plaintiff's protected class and was treated differently from plaintiff.

As set forth in Appellee's Brief, there is no dispute that a plaintiff is not required to establish the existence of sufficiently similarly situated employee comparators in order to state a claim for discrimination under Title VII.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ..................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................. i

TABLE OF AUTHORITIES ........................................................................ vi

STATEMENT OF THE ISSUES.....................................................................1

STATEMENT OF THE CASE .......................................................................2

I.     INTRODUCTION ...............................................................................2

II.     STATEMENT OF FACTS....................................................................4

     A.     Plaintiff's Employment........................................................4

     B.     Plaintiff's Discrimination Claims .........................................4

         1.     The "Red" Dot Email ...............................................4

         2.     Plaintiff's Alleged Comparators................................6

         3.     Alleged Evidence of Pretext.....................................9

             i.     Reasons for Plaintiff's Termination..............9

             ii.     Plaintiff's Performance Evaluation.............10

             iii.     Decision Maker Regarding Plaintiff's Termination.................................................10

             iv.     Beach's Remark Regarding Needing To Be Careful Who He Fires ................................11

     C.     Plaintiff's Retaliation and Whistleblower Claims...........................12

         1.     August 7, 2019 Email.............................................13

         2.     Performance Write-Ups..........................................13

         3.     September 8, 2019 Email ........................................13

D. Amerijet's Motion to Dismiss Plaintiff's SAC ...............................14

E. The District Court's Order Granting Amerijet's MTD ...................14

F. Plaintiff's Appeal of the District Court's Order ..............................15

III. STANDARD OF REVIEW.....................................................................15

SUMMARY OF THE ARGUMENT .......................................................................17

ARGUMENT ...........................................................................................................17

IV. THE APPLICABLE PLEADING STANDARD ....................................18

V. PLAINTIFF'S SAC FAILS TO STATE A CLAIM FOR RACE
OR GENDER DISCRIMINATION .........................................................19

A. Plaintiff Has Failed To Identify Any Similarly Situated
Employees Who Were Treated More Favorably.............................20

1. Plaintiff's Alleged Comparators..............................................21

2. Plaintiff And Her Alleged Comparators Were
Employed In Different Positions..............................................22

3. Plaintiff And Her Alleged Comparators Did Not Share
The Same Supervisor................................................................23

4. Plaintiff And Her Alleged Comparators Did Not
Engage In The Same Basic Conduct ......................................25

5. Plaintiff And Her Alleged Comparators Were Not
Subject To The Same Employment Policy, Guideline,
Or Rule .....................................................................................27

B. Plaintiff Has Failed To Present Sufficient Factual Allegations
Plausibly To Suggest Race Or Gender Discrimination ..................28

1. There Is No Discrepancy In Amerijet's Stated Reasons
For Terminating Plaintiff's Employment................................28

2. Plaintiff's Positive Performance Evaluation Issued 17
Months Prior To Her Termination Is Not Evidence Of
Pretext......................................................................................30

3.      There Is No Discrepancy Regarding Who Made The
        Decision To Terminate Plaintiff's Employment ...................32

4.      Beach's Remark Regarding Needing To Be Careful
        Who He Fires Had Nothing To Do With Plaintiff's
        Race Or Gender ....................................................33

C.    The District Court Did Not Err In Finding That Plaintiff
      Failed To State Claims For Race Or Gender Discrimination ..........34

VI.    THE DISTRICT COURT DID NOT REQUIRE PLAINITFF TO
       PLEAD A PRIMA FACIE CASE OF DISCRIMINATION ..................36

A.    Plaintiff Erroneously Argues That Analyzing The Sufficiency
      Of Alleged Comparators Is Improper At The Pleading Stage ..........38

VII.   PLAINTIFF'S SAC FAILS TO STATE A CLAIM FOR
       RETALIATION ......................................................................40

A.    Plaintiff Has Failed To Allege Any Facts To Suggest That She
      Engaged In Protected Activity .........................................41

1.      Plaintiff's August 7, 2019 Email Is Not Protected
        Activity, And Her Subsequent Write Ups Are Not
        Evidence Of Retaliation .........................................41

2.      Plaintiff's September 8, 2019 Email Is Not Protected
        Activity ...................................................................42

B.    Plaintiff Has Failed To Allege Any Facts To Suggest Any
      Causal Relationship Between Her Alleged Protected Activity
      And Her Termination ..........................................................45

VIII.  PLAINTIFF'S SAC FAILS TO STATE A CLAIM UNDER
       FLORIDA'S PRIVATE SECTOR WHISTLEBLOWER ACT ..............47

A.    The "Actual Violation" Standard Is The Appropriate Standard
      Under Florida Law ..............................................................48

B.    Despite A Split In The Florida Courts Regarding Whether A
      Plaintiff Is Required To Show An "Actual Violation" Or A
      "Reasonable Belief" Plaintiff Fails To Meet Either Standard ..........49

iv

IX.    THE DISTRICT COURT DID NOT ERR IN DISMISSING
PLAINTIFF'S SAC WITH PREJUDICE ..................................................50

    A.    The District Court's Order Dismissing Plaintiff's SAC With
Prejudice ..........................................................................................51

        1.    The District Court's Order Dismissing Plaintiff's
Original Complaint.................................................................52

        2.    Plaintiff's Motion To Amend Her FAC ................................52

    B.    The District Court's Did Not Abuse Its Discretion In
Dismissing Plaintiff's SAC With Prejudice ....................................54

X.    CONCLUSION ..........................................................................................55

CERTIFICATE OF COMPLIANCE.......................................................................57

CERTIFICATE OF SERVICE ................................................................................57

SERVICE LIST........................................................................................................58

v

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aery v. Wallace Lincoln-Mercury, LLC*,
    118 So. 3d 904 (Fla. 4th DCA 2013)................................................48, 49

*Alvarez v. Lakeland Area Mass Transit Dist.*,
    406 F. Supp. 3d 1348 (M.D. Fla. 2019)............................................38

*Arafat v. Sch. Bd. of Broward Cnty.*,
    549 F. App'x 872 (11th Cir. 2013).................................................21, 35

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................16, 18, 19

*Bazemore v. Dynamic Sec.*,
    2012 WL 3543473 (M.D. Ala. July 26, 2012) ..................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................16, 18, 19

*Candina v. Univ. of Miami*,
    185 F. Supp. 3d 1343 (S.D. Fla. 2015)...........................40, 41, 42, 43

*Canty v. Fry's Elecs., Inc.*,
    2012 WL 1038619 (N.D. Ga. Feb. 12, 2012)................................44, 48

*Caraway v. Sec'y, U.S. Dep't of Transp.*,
    550 F. App'x 704 (11th Cir. 2013)..................................................21

*Colas v. Lourdes-Noreen McKeen Residence for Geriatric Care, Inc.,*
    2021 WL 4896891 (S.D. Fla. Sept. 29, 2021)...................................24

*Coleman v. C&S Wholesale Grocers, Inc.*,
    2019 WL 13235811 (S.D. Fla. Aug. 26, 2019) .................................39

*Crawford v. Carroll*,
    529 F.3d 961 (11th Cir. 2008) .......................................................18

*DiBenedetto v. AT&T Servs., Inc.*,
    2022 WL 1682420 (N.D. Ga. May 19, 2022)....................................19

*Dingman v. Delta Health Grp., Inc.*,
　26 F. Supp. 2d 1349 (S.D. Fla. 1998) ..................................................30

*Drago v. Jenne*,
　453 F.3d 1301 (11th Cir. 2006) ..........................................................46

*Drew Estate Holding Co., LLC v. Fantasia Distribution, Inc.*,
　2012 WL 234105 (S.D. Fla. Jan. 24, 2012) ..........................................7

*Drisin v. Fla. Int'l Univ. Bd. of Trustees*,
　2017 WL 3505299 (S.D. Fla. June 27, 2017) .....................................21

*Edgerton v. City of Plantation*,
　2015 WL 13311019 (S.D. Fla. 2015) .................................................22

*Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*,
　673 F. App'x 925 (11th Cir. 2016) ........................................16, 50, 54

*Erickson v. Farmland Indus., Inc.*,
　271 F.3d 718 (8th Cir. 2001) ..............................................................31

*Financial Security Assurance, Inc. v. Stephens, Inc.*,
　500 F.3d 1276 (11th Cir. 2007) ..........................................................19

*Finch v. Morgan Stanley & Co. LLC*,
　2016 WL 4248248 (S.D. Fla. Aug. 11, 2016) .....................................44

*Gilliam v. U.S. Dep't of Veterans Affs.*,
　2017 WL 6344207 (M.D. Fla. Dec. 12, 2017) ....................................22

*Gomez v. City of Doral*,
　2022 WL 19201 (11th Cir. Jan. 3, 2022) ............................................38

*Harper v. Blockbuster Entm't Corp.*,
　139 F.3d 1385 (11th Cir.1998) .....................................................18, 41

*Henderson v. City of Birmingham, Alabama*,
　826 F. App'x 736 (11th Cir. 2020) .....................................................46

*Henderson v. Dade Cty. Police Benev. Ass'n, Inc.*,
　2014 WL 3591600 (S.D. Fla. July 18, 2014) ......................................18

*Hernandez v. CareerSource Palm Beach Cnty., Inc.*,
2023 WL 4042012 (S.D. Fla. June 16, 2023)......................................................39

*Hoefling v. City of Miami*,
811 F.3d 1271 (11th Cir. 2016) ..............................................................6

*Howard v. Metro. Atlanta Rapid Transit Auth.*,
2016 WL 10988790 (N.D. Ga. July 14, 2016) ......................................31

*In re W. Caribbean Airways Crew Members*,
2009 WL 899961 (S.D. Fla. Mar. 30, 2009) .........................................27

*Jackson v. Okaloosa County, Fla.*,
21 F.3d 1531 (11th Cir. 1994) ...............................................................27

*Kattell v. Brenntag Mid-south, Inc.*,
2019 WL 13143000 (M.D. Fla. June 11, 2019) ....................................47

*Kearns v. Farmer Acquisition Co.*,
157 So. 3d 548 (Fla. 2d DCA 2015).........................................47, 48, 49

*King v. UA Loc. 91*,
2022 WL 803379 (N.D. Ala. Mar. 15, 2022) .......................................20

*Lacy v. City of Huntsville Alabama*,
2022 WL 303385 (11th Cir. Feb. 2, 2022) ....................................19, 20, 21, 39

*LaGrasta v. First Union Sec., Inc.*,
358 F.3d 840 (11th Cir. 2004) .................................................................7

*Lewis v. City of Union City, Georgia*,
918 F.3d 1213 (11th Cir. 2019) .............................................................20

*Martinez v. Goodwill Indus. of S. Fla., Inc.*,
2011 WL 13217232 (S.D. Fla. Apr. 1, 2011).......................................47

*Maynard v. Bd. of Regents of Div. of Universities of Fla. Dep't of
Educ. ex rel. Univ. of S. Fla.*,
342 F.3d 1281 (11th Cir. 2003) .............................................................20

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)................................................................................20

*McDonough v. City of Homestead, Fla.*,
  2023 WL 3035215 (11th Cir. Apr. 21, 2023)...............................................16, 50

*McKenzie v. EAP Mgmt. Corp.*,
  40 F. Supp. 2d 1369 (S.D. Fla. 1999).....................................................29

*McLain v. Liberty Nat. Ins.*,
  376 F. App'x 965 (11th Cir. 2010).......................................................33

*McLain v. Liberty Nat'l Life Ins. Co.*,
  2009 WL 10694914 (N.D. Ala. June 24, 2009) ...................................33

*Misquith v. Palm Beach Cnty. Health Care Dist.*,
  2021 WL 8055475 (S.D. Fla. Sept. 29, 2021)....................................36

*Nurse v. City of Alpharetta*,
  775 F. App'x 603 (11th Cir. 2019)...............................................15, 34

*Olmsted v. Taco Bell Corp.*,
  141 F.3d 1457 (11th Cir. 1998) ..........................................................40

*Pierre v. AIDS Healthcare Found., Inc.*,
  2020 WL 6381557 (S.D. Fla. Oct. 30, 2020) ..............................47, 49

*Pinkard v. Wal-Mart Stores, Inc.*,
  2012 WL 5511039 (N.D. Ala. Nov. 9, 2012)......................................24

*Quach v. Paragon Sys. Inc.*,
  2015 WL 13719674 (N.D. Ga. Oct. 28, 2015)...................................44

*Reed v. Forney Indus., Inc.*,
  800 F. App'x 782 (11th Cir. 2020)....................................................46

*Roberts v. Separators*, *Inc.*,
  172 F.3d 448 (7th Cir. 1999) ............................................................31

*Satchel v. Sch. Bd. of Hillsborough Cnty.*,
  251 F. App'x 626 (11th Cir. 2007).....................................................44

*Silver v. City of Pembroke Pines*,
  2021 WL 4341736 (S.D. Fla. Sept. 5, 2021)....................................41

*Sridej v. Brown*,
    361 Fed. App'x. 31 (11th Cir. 2010) .................................................44

*Tillman v. Advanced Pub. Safety, Inc.*,
    2016 WL 11501680 (S.D. Fla. Nov. 14, 2016) ...................................49

*Tran v. City of Holmes Beach*,
    817 F. App'x 911 (11th Cir. 2020) .............................................16, 50

*Walker v. St. Joseph's/Candler Health Sys., Inc.*,
    506 F. App'x 886 (11th Cir. 2013) (per curiam) ..............................31

*Wells v. Miami Dade Cnty.*,
    2016 WL 7492560 (S.D. Fla. Dec. 30, 2016)....................................45

*Williams v. Gallup, Inc.*,
    No.1:15-CV-02650-WSD-WEJ, 2016 WL 10655518
    (N.D. Ga. Sept. 15, 2016) ...............................................................45

*Wooden v. Dolgencorp, LLC*,
    2022 WL 20088082 (N.D. Fla. Feb. 1, 2022) ....................................5

**Statutes**

42 U.S.C. § 2000e *et seq.* .......................................................................17

Fla. Stat. § 448.102 ....................................................................18, 47, 49

Fla. Stat. § 760.01 *et seq.* ........................................................................17

**Rules**

11th Cir. R. 26.1 .....................................................................................C-1

Fed. R. App. P. 26.1 ...............................................................................C-1

Fed. R. App. P. 32 ....................................................................................57

Fed. R. Civ. P. 12 ...............................................................14, 15, 16, 17

**Other Authorities**

https://www.faa.gov/regulations_policies/advisory_circulars/index.cf
    m/go/document.information/documentid/73587 .................................12

## STATEMENT OF THE ISSUES

1.    Should this Court affirm the District Court's dismissal of the Second Amended Complaint for failure to state claims for discrimination and retaliation?

2.    Did the District Court abuse its discretion in dismissing the Second Amended Complaint with prejudice?[1]

---

[1] References to "DE __" are to docket entries.

## STATEMENT OF THE CASE

### I.    INTRODUCTION

On August 5, 2021, Plaintiff/Appellant Marcia McManus ("Plaintiff") filed a complaint against her former employer Defendant/Appellee Amerijet International, Inc. ("Amerijet") asserting various claims for discrimination and retaliation. DE 1.

On October 4, 2021, Amerijet filed its Motion to Dismiss Plaintiff's original Complaint. DE 8. On May 1, 2022, the District Court entered a paperless order granting Amerijet's Motion to Dismiss Plaintiff's original Complaint as a shotgun pleading. DE 29. The District Court's order noted that Plaintiff's Complaint was "replete with conclusory recitations of the elements."

Plaintiff timely filed her first Amended Complaint on June 9, 2022. DE 37. On June 23, 2022, Amerijet filed its Motion to Dismiss Plaintiff's first Amended Complaint, arguing that Plaintiff failed to state a claim on 13 of the 15 counts she asserted. DE 42.

On January 2, 2023, prior to the District Court ruling on Amerijet's Motion to Dismiss Plaintiff's Amended Complaint, Plaintiff filed a motion seeking leave of Court to file her Second Amended Complaint – her third complaint in this litigation. DE 82. The District Court granted Plaintiff's request, and Plaintiff filed her SAC on January 9, 2023. DE 89.

On January 9, 2023, *after* discovery closed in this litigation, *after* Amerijet produced thousands pages of documents to Plaintiff, and *after* Amerijet deposed Plaintiff and Plaintiff deposed five key current and former executives of Amerijet, Plaintiff filed her Second Amended Complaint ("SAC"). DE 89.

With discovery completed, and all the relevant facts and testimony at Plaintiff's disposal, Plaintiff's SAC, her third operative complaint, should have contained sufficient alleged facts to meet the applicable pleading standard. However, Plaintiff failed to do so, as argued in Amerijet's Motion to Dismiss Plaintiff's SAC. DE 90. The District Court agreed. *See* DE 122.

Plaintiff is now seeking to overturn the District Court's decision. In support of her appeal, Plaintiff is rehashing the same arguments she made in the lower court. She is also reviving claims and allegations from previously filed versions of her complaint, which she had abandoned in her SAC. For the reasons stated below, Plaintiff's arguments and attempts to reanimate discarded claims and allegations fail to show that the District Court erred in concluding that Plaintiff failed to state any viable claims. Plaintiff also fails to show that the District Court abused its discretion in dismissing the SAC with prejudice.

Accordingly, the District Court's decision should be affirmed.

## II.    STATEMENT OF FACTS

### A.    <u>Plaintiff's Employment</u>

Plaintiff was employed by Amerijet as Crew Planning and Scheduling Manager. DE 89, p. 3 ¶ 16. In this position, Plaintiff was responsible for mitigating overages. *Id.* at ¶ 19.

Overages were extra payments due to pilots who were scheduled to fly outside of their assigned schedule initially issued at the beginning of each roster period. *Id.* at ¶ 20-21. Amerijet wanted to keep overages as low as possible. *Id.* at ¶ 22

### B.    <u>Plaintiff's Discrimination Claims</u>

Plaintiff's SAC alleges that she was discriminated by Amerijet on the basis of her race and gender. DE 89. In support of her discrimination claims, Plaintiff does not provide any direct evidence of discrimination. Instead, she relies solely on circumstantial evidence.

#### 1.    *The "Red" Dot Email*

At the outset, it should be noted that Plaintiff's Appellant Brief ("Appellant Brief") attempts to revive claims and allegations from her First Amended Complaint ("FAC"), which she clearly had abandoned in her SAC. In her FAC, Plaintiff alleged that Amerijet's COO, Brian Beach, sent an email to McManus *and other managers* stating that there was a "red dot" on their foreheads. DE 37, p. 6 ¶ 52. Plaintiff further alleged that this comment was racist because Plaintiff is Black with Indian descent,

*and* threatening because it referred to a gun being pointed at her (and others) heads. *Id*.

In her Brief, Plaintiff argues that the "red dot" comment is an "anti-Indian pejorative" and a "slur against persons of Indian national origin." *See*, Appellant Brief, p. 14 fn 1, p. 20. Plaintiff claims this email suggests discriminatory animus. *Id.* at p. 29.

This is a disingenuous argument given the fact that Plaintiff abandoned her national origin claim based on her Indian ancestry. In her original Complaint and her FAC, Plaintiff asserted claims for discrimination based on her Indian national origin and included the "red dot" email as evidence of national origin discrimination. DE 1, p. 6 ¶ 42, 36 ¶¶ 165-167, p. 20-21 ¶¶ 174-175; DE 37, p. 3 ¶¶ 14, 21, p. 6 ¶ 52, p. 22 ¶¶ 180-185, p. 30 ¶¶ 227-234. However, Plaintiff's SAC did not include any claims of national origin discrimination, or allegations that she was discriminated in any way because she is of Indian descent. Moreover, Plaintiff made no reference to the "red dot" comment in her SAC.[2]

This alone is grounds to disregard Plaintiff's heretofore abandoned claims and allegations, which are outside the four corners of the SAC. *See Wooden v.*

---

[2] In her SAC, Plaintiff only referenced the email containing the "red dot" comment in support of her allegation that multiple employees shared responsibility for overages. DE 89, p. 4 ¶ 24. She did not make any reference or allegation regarding the "red dot" comment.

*Dolgencorp, LLC*, 2022 WL 20088082, at *5 (N.D. Fla. Feb. 1, 2022) (holding that once a plaintiff amends her complaint "all earlier complaints and filings—including exhibits—are disregarded and matters not set forth in the amended pleading are deemed to have been abandoned.") (citing *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016)).

However, a close reading of the alleged "red dot" email reveals the insincerity of Plaintiff's argument, and the reason why she likely abandoned it in the first place.

First, Plaintiff's SAC is making discrimination claims based only on her race (Black) and her gender (female). It is unclear how a red dot on one's forehead is in any way related to Plaintiff's race or gender. Second, the email was sent to a *group*, not just Plaintiff. DE 89-1. The email clearly represented a C-level executive communicating to his subordinates that they were all on the hot seat. Plaintiff does not allege that the entire group of recipients receiving the email was made up of Black, female, or Indian employees. Furthermore, by Plaintiff's own admission in her FAC, the "red dot" comment referred to a "gun" being pointed at their foreheads. DE 37, p. 6 ¶ 52.

### 2. *Plaintiff's Alleged Comparators*

With respect to her race and gender discrimination claims, Plaintiff has alleged the existence of three comparators, Chief Operating Officer Brian Beach, Director of Operations Steven Mathis, and Chief Pilot Hector Gonzalez. DE 89, p.

3-4 ¶ 23, p. 7 ¶¶ 46-47. The <u>only</u> factor that Plaintiff alleges qualifies these individuals as similarly situated comparators is the allegation that they were management-level employees who, through the chain of reporting, had *some* ultimate responsibility for monitoring and mitigating overage. DE 89, p. 3-4 at ¶ 23-24, p. 7 ¶¶ 46-47. Plaintiff does not provide any allegations regarding what responsibility her alleged comparators had in monitoring or mitigating overages, or even that her alleged comparators failed to fulfill those responsibilities.

However, Plaintiff does provide allegations regarding *her* responsibilities with respect to overages. Overages were extra payments due to pilots who were *scheduled* to fly outside of their assigned schedule initially issued at the beginning of each roster period. *Id.* at ¶¶ 20-21. Plaintiff alleges that she was employed as the Crew Planning and *Scheduling* Manager, and was responsible for mitigating overages. *Id.* at ¶¶ 16-19. Moreover, Amerijet stated in its Position Statement to the EEOC that Plaintiff was in charge of scheduling the crews for each flight and handling the resulting flight crew costs and payroll. DE 97-1, p. 5. [3] As the manager

---

[3] In ruling on a motion to dismiss, a Court may consider "well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *Drew Estate Holding Co., LLC v. Fantasia Distribution, Inc.*, 2012 WL 234105 at *3 (S.D. Fla. Jan. 24, 2012) (citing *LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Plaintiff references Amerijet's Position Statement in her SAC (App. Doc. 89, p. 8-7 ¶¶ 59-61), so the Court may consider the Position Statement. *See Bazemore v. Dynamic Sec.*, 2012 WL 3543473, at *2 n. 3 (M.D. Ala. July 26, 2012), *report and recommendation adopted*, 2012 WL

of the department that scheduled flight crews, Plaintiff provides factual allegations that plainly place the responsibility for mitigating overages within the department she leads. Clearly, Plaintiff had *primary* responsibility for monitoring and mitigating overage. DE 89, p. 3 at ¶¶ 16-22; DE 97-1, p. 5.

Plaintiff alleges that there are "numerous emails indicating that responsibility for Overages was shared by [Plaintiff]" and her alleged comparators. DE 89, p. 4 ¶ 24. Yet, despite the fact that discovery had closed by the time Plaintiff filed her SAC, she attached just one of these alleged emails to her SAC, which states:

> This group has a red dot on our forehead with expenses. We need to know to the penny where everything has gone. This gets to how we are crewing, scheduling, training, everything.

DE 89-1. Notably, this email is sent by one of Plaintiff's alleged comparators, COO Brian Beach, to a group that includes individuals who are not Plaintiff's alleged comparators (i.e. Yunel Alizo). *Id.* Beach does not even mention overages in the email. Instead, he mentions that the group has a target on their heads with respect to "expenses," and goes on to list "crewing, scheduling, training, everything." *Id.* Clearly, Beach was concerned about *all* expenses, and was informing his managers that they needed to be mindful of the expenses for which they were responsible. Plaintiff, however, would have the Court believe that every manager on that email

---

3544741 (M.D. Ala. Aug. 16, 2012) (holding that the Court could consider EEOC documents where plaintiff referred to them in the body of her complaint).

8

was somehow equally responsible for each and every expense discussed in that email.

### 3.    *Alleged Evidence of Pretext*

In her SAC, Plaintiff cites to several circumstances that she purports amounts to evidence of pretext. A close reading of her allegations undercut her claims.

### i.    **Reasons for Plaintiff's Termination**

Plaintiff alleges that she was informed via email by Amerijet that her position was not being eliminated, but rather, she was being terminated because Amerijet decided to make a change in her position. DE 89, p. 7 ¶ 44. Plaintiff further alleges in her SAC that in its Position Statement to the EEOC, Amerijet stated that it terminated Plaintiff's employment due to her inability to control overages. DE 89, p. 7 ¶ 45.

Amerijet did state in its Position Statement that *one* of the reasons it terminated Plaintiff's employment was her inability to control overages. DE 97-1, p. 7. Amerijet also stated that there were additional reasons, including: (1) Plaintiff's failure to provide suggestions for how to address overages; (2) Plaintiff's failure to submit required reports on a timely basis; and (3) Plaintiff's failure to improve the effectiveness and efficiency of her department. *Id.* at 210-211.

Plaintiff does not allege in her SAC that there is any discrepancy with respect to the stated reasons for her termination. Rather, she made that argument for the first time in her Response to Amerijet's Motion to Dismiss Plaintiff's SAC.

However, no such discrepancy exists. Amerijet decided to make a change in Plaintiff's position because of several performance issues, including the fact that she could not get overages under control. DE 89, p. 7 ¶¶ 44-45; DE 97-1, p. 4-8. These are not conflicting reasons.

### ii.    Plaintiff's Performance Evaluation

Plaintiff alleges in her SAC that a positive performance evaluation she received approximately one and a half years prior to her termination is evidence of pretext. DE 89, p. 7-8 ¶¶ 50-53. She also alleges that she received perfect scores in all the performance evaluations she received prior to the evaluation she received one and a half years prior to her termination. DE 89, p. 8 ¶ 53. Notably, Plaintiff does not make any allegations regarding any performance evaluations she received within the final 17 months of her employment.

### iii.    Decision Maker Regarding Plaintiff's Termination

Plaintiff alleges that there is a discrepancy regarding who made the decision to terminate her employment. DE 89, p. 9 ¶ 61. In support of this allegation, Plaintiff cites to an email dated 13 days after Plaintiff's termination that Amerijet's COO, Brian Beach, sent to someone with a GMAIL email account (i.e. not an Amerijet

10

email account) stating "I got rid of Marcia, flight department is next but I need ETOPS first so I need to be careful who I fire at the moment." DE 89, p. 8 ¶ 60; DE 89-8. Plaintiff claims that this contradicts Amerijet's Position Statement, which indicated that its CEO Vic Karjian was the *final* decision-maker regarding Plaintiff's termination. DE 89, p. 8 ¶ 59. However, a closer reading of Beach's email and Amerijet's Position Statement reveal no such discrepancy.

First, Amerijet was very clear in its Position Statement regarding Beach's involvement in Plaintiff's termination. DE 97-1, p. 4-8. Amerijet clearly stated that Beach was frustrated with Plaintiff's inability to get overages under control or submit overage information he had requested from her. DE 97-1, p. 5-6. It further explained that Beach made it clear to Karjian that he was frustrated with Plaintiff's performance and that Karjian made the decision to terminate Plaintiff "based in part on Beach's frustration." DE 97-1, p. 7-8.

With respect to Beach's email stating that "I got rid of Marcia," it is nothing more than the COO of Amerijet using "I" to refer to action the Company took rather than unnecessarily identifying the person who took such action. Doc. 89-8, p. 146.

### iv.  Beach's Remark Regarding Needing To Be Careful Who He Fires

In her Brief, Plaintiff argues that in Beach's email "Beach wrote that he needed 'to be careful who I fire at the moment,' suggesting that he had cause to be

11

concerned about facing legal liability for terminating McManus." Appellant Brief, p. 29.

However, Plaintiff cherry picked Beach's email to make it seem like his statement that "I need to be careful who I fire at the moment" was directly connected to his statement that "I got rid of Marcia." Plaintiff conveniently left out the portion of the email that would reveal the true, non-discriminatory nature of his statements. The entire, unedited version of Beach's email makes it clear that he needed to be careful whom he fired because he needed to obtain ETOPS certification: "I got rid of Marcia, flight department is next **but I need ETOPS first so I need to be careful who I fire at the moment.**" [4]  (Emphasis added). DE 89-8. Clearly, Beach was considering terminations in other departments, and his desire to be careful with respect to who Amerijet might terminate related to Amerijet's need to obtain ETOPS rather than anything related to race or gender.

## C.    <u>Plaintiff's Retaliation and Whistleblower Claims</u>

Plaintiff's SAC alleges that she was retaliated against by Amerijet for engaging in protected activity. DE 89. In support of her retaliation claims, Plaintiff cites only to one alleged instance of protected activity: an email she sent to

---

[4] Amerijet asks the Court to take judicial notice that "ETOPS" means Extended-range Twin-engine Operational Performance Standards. It is an FAA certification that permits twin engine aircraft to fly longer routes. *See* https://www.faa.gov/regulations_policies/advisory_circulars/index.cfm/go/document.information/documentid/73587.

Amerijet's Human Resources department on September 8, 2019, which is discussed in more detail below. DE 89, p. 4-5 ¶¶ 33-35; DE 89-3.

### 1.    *August 7, 2019 Email*

On August 7, 2019, Plaintiff emailed Amerijet's CEO, Vic Karjian, to request a meeting to discuss Karjian's disappointment with the Crew Scheduling department and the allegedly low morale within the department. DE 89, p. 4 ¶ 27; DE 89-2. Plaintiff does not indicate in this email that she is experiencing any form of discrimination or hostile work environment. *Id.*

### 2.    *Performance Write-Ups*

Plaintiff alleges that after requesting the meeting with Karjian, Amerijet wrote her up four (4) times. DE 89, p. 4 ¶ 32, p. 8 ¶ 57. Plaintiff does not allege that she engaged in any protected activity prior to these write ups.

### 3.    *September 8, 2019 Email*

After Plaintiff received the four write ups, she sent an email to Amerijet's Director of Human Resources and its General Counsel to complain about the write ups. DE 89, p. 4-5 ¶¶ 32-34; DE 89-3. In the email, Plaintiff also alleges that she *and other managers* were experiencing a hostile environment at the hands of COO Brian Beach. DE 89-3.

Nowhere in Plaintiff's email does she indicate, explicitly or implicitly, that she believes the hostile environment is being caused due to her race or gender. *Id.* In

fact, Plaintiff specifically notes that one of the other managers who was experiencing a hostile environment was "Ed," who is ostensibly a male. *Id.*

**D.**    **Amerijet's Motion to Dismiss Plaintiff's SAC**

On January 23, 2023, Amerijet filed its Motion to Dismiss Plaintiff's SAC ("MTD"). DE 90. In the MTD, Amerijet argued that Plaintiff failed to allege sufficient facts to state a claim under Federal Rule of Civil Procedure 12(b)(6) for discrimination based on her race or gender, and that she failed to state retaliation or whistleblower claims. *Id.* Accordingly, Amerijet argued that Plaintiff's SAC should be dismissed in its entirety.

Furthermore, Amerijet argued that such dismissal should be with prejudice because Plaintiff had already been given multiple opportunities by the District Court to amend previously defective complaints and was on her third operative complaint. *Id.*, p. 162-163. Moreover, discovery had closed by the time Plaintiff filed her SAC, therefore Plaintiff's SAC should have contained sufficient factual allegations to state a claim. The fact that it did not is indicative that it would be futile to provide her more opportunities to cure her pleading deficiencies. *Id.*

**E.**    **The District Court's Order Granting Amerijet's MTD**

On September 25, 2023, the District Court entered an order granting Amerijet's MTD and dismissed Plaintiff's SAC in its entirety with prejudice ("Order"). DE 122. In its Order, the District Court agreed with Amerijet that Plaintiff

14

failed to state a claim for discrimination based on her race or gender, and that she failed to state retaliation or whistleblower claims. *Id.*

The District Court noted that Plaintiff was "not required to <u>plead</u> [*prima facie* elements] to survive dismissal." *Id.*, p. 220. It further noted that in order to plead a discrimination claim under Title VII, "a complaint need only 'provide enough factual matter (taken as true) to suggest intentional race [or gender] discrimination.'" *Id.* However, the District Court explained that "the *prima facie* claim elements can aid a court in organizing the allegations and identifying any material omissions at the pleading stage." *Id.*

Similarly, in analyzing Plaintiff's retaliation and whistleblower claims, the District Court was guided by the appropriate standard of whether Plaintiff plausibly alleged unlawful retaliation. *Id.*, p. 223-225.

Nowhere in the District Court's Order does it state that Plaintiff's SAC needed to establish all the elements of a *prima facie* case in order to survive Amerijet's MTD.

**F.    <u>Plaintiff's Appeal of the District Court's Order</u>**

On October 25, 2023, Plaintiff filed her Notice of Appeal. DE 124.

**III.    STANDARD OF REVIEW**

This Court reviews "de novo the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Nurse v. City of Alpharetta*, 775 F. App'x 603, 606 (11th

Cir. 2019) (citation omitted); Fed. R. Civ. P. 12(b)(6). This Court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Id.*

In analyzing whether a complaint survives a Rule 12(b)(6) motion, this Court asks "whether the complaint 'contain[s] sufficient factual matter ... to state a claim to relief that is plausible on its face.' " *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

A district court's decision to dismiss a complaint with prejudice is reviewed under an abuse of discretion standard. *See McDonough v. City of Homestead, Fla.*, 2023 WL 3035215, *4 (11th Cir. Apr. 21, 2023); *Tran v. City of Holmes Beach*, 817 F. App'x 911, 915 (11th Cir. 2020).

This Court has held that district courts "should grant a plaintiff at least one chance to amend its complaint before dismissing the action with prejudice." *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 929 (11th Cir. 2016) (citation omitted). However, this Court has "never required district courts to grant counseled plaintiffs more than one opportunity to amend a deficient complaint[.]" *Id.* at 930.

16

## SUMMARY OF THE ARGUMENT

The District Court applied the appropriate pleading standard in analyzing Plaintiff's SAC for failure to state a claim under Rule 12(b)(6). The District Court reviewed Plaintiff's SAC to determine whether it alleged sufficient facts to plausibly suggest that Amerijet discriminated against Plaintiff on the basis of her race or gender, or to plausibly suggest that Amerijet retaliated against Plaintiff for engaging in protected activity.

The District Court did not err in concluding that Plaintiff failed to allege sufficient facts to plausibly suggest that Plaintiff suffered discrimination or retaliation during her employment at Amerijet.

Furthermore, the District Court did not abuse its discretion in dismissing Plaintiff's SAC with prejudice in light of the fact that: (1) it had previously provided her with multiple opportunities to cure her pleading deficiencies; and (2) Plaintiff's SAC was her third operative complaint, and was filed after the close of discovery.

Accordingly, this Court should affirm the District Court's ruling.

## ARGUMENT

In Counts I through VI of her SAC, Plaintiff has set forth separate claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Florida Civil Rights Act, Fla. Stat. § 760.01 *et seq.* ("FCRA") for discrimination on the basis of her race and sex as well as retaliation for allegedly engaging in

17

protected activity.[5] In Count VII, Plaintiff has set forth a claim for retaliation in violation of Florida's Private Sector Whistleblower Act, Fla. Stat. § 448.102 ("FWA"). For the reasons stated below, Plaintiff has failed to state a claim on all of the counts in her SAC, and therefore, the District Court did not err in dismissing the SAC in its entirety.

Furthermore, for the reasons stated below, the District Court did not abuse its discretion in dismissing the SAC with prejudice.

## IV.    THE APPLICABLE PLEADING STANDARD

The Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), dictate that "[t]o survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 570). The Court must disregard "labels and conclusions," any "formulaic recitation of the elements of a cause of action," and "'naked assertion[s]' devoid of 'further factual enhancement,'" to determine whether

---

[5] Plaintiff asserts these claims under Title VII and the FCRA. Plaintiff sets forth the same factual allegations for her respective claims under both statutes. For purposes of this motion, Plaintiff's Title VII and FCRA claims will be addressed together since "courts have consistently held that the elements of a prima facie case and the analytical framework for employment discrimination claims made under Title VII [and] the Florida Civil Rights Act . . . are the same." *Henderson v. Dade Cty. Police Benev. Ass'n, Inc*., 2014 WL 3591600, at *6 (S.D. Fla. July 18, 2014) (citing *Crawford v. Carroll,* 529 F.3d 961, 970 (11th Cir. 2008); *see also Harper v. Blockbuster Entm't Corp*., 139 F.3d 1385, 1387 (11th Cir.1998).

the remaining factual allegations plausibly suggest a right to relief above the speculative level. *Twombly*, 550 U.S. at 557; *Iqbal*, 556 U.S. at 677, 681.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677. This Court has observed that the complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Financial Security Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282-83 (11th Cir. 2007) (citation omitted).

## V.    PLAINTIFF'S SAC FAILS TO STATE A CLAIM FOR RACE OR GENDER DISCRIMINATION

This Court has explained that for a plaintiff to state a claim for discrimination under Title VII, a complaint needs to "set out enough factual content to allow a court to draw the reasonable inference" that the defendant is liable for the alleged discrimination. *See Lacy v. City of Huntsville Alabama*, 2022 WL 303385, at *4 (11th Cir. Feb. 2, 2022) (citation omitted).

While a plaintiff is not required to establish the *prima facie* elements of a Title VII claim in order to survive dismissal, the *prima facie* claim elements can aid a court in organizing the allegations, identifying any material omissions at the pleading stage, and determining whether a plaintiff has alleged enough facts to state a plausible claim. *DiBenedetto v. AT&T Servs., Inc.*, 2022 WL 1682420, at *6 (N.D.

19

Ga. May 19, 2022); *King v. UA Loc. 91*, 2022 WL 803379, at *7 (N.D. Ala. Mar. 15, 2022).

Accordingly, the elements a plaintiff must demonstrate in order to establish the *prima facie* elements of a Title VII discrimination claim are that: (1) she belongs to a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside her protected class more favorably; and (4) she is qualified to do the job. *See Maynard v. Bd. of Regents of Div. of Universities of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1289 (11th Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

### A.    Plaintiff Has Failed To Identify Any Similarly Situated Employees Who Were Treated More Favorably

Plaintiff has failed to allege the existence of any comparators outside her protected class "who were similarly situated to Plaintiff in all relevant aspects" and who were treated more favorably. *Lacy v. City of Huntsville Alabama*, 2022 WL 303385, at *4 fn 4 (11th Cir. Feb. 2, 2022) (quoting *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1226 (11th Cir. 2019)).

To qualify as "similarly situated," employees with whom Plaintiff seeks to compare herself to must have: (1) engaged in the same basic misconduct as the plaintiff; (2) been subject to the same employment policy, guideline, or rule as the

plaintiff; (3) had the same supervisor as the plaintiff; and (4) share the plaintiff's employment or disciplinary history. *Id.*

Notably, the sufficiency of a comparator can be decided at the motion to dismiss stage. *See e.g. Id.* at 4 (analyzing sufficiency of plaintiff's alleged comparators in determining that plaintiff failed to state a claim for discrimination); *Arafat v. Sch. Bd. of Broward Cnty.*, 549 F. App'x 872, 874 (11th Cir. 2013) (analyzing sufficiency of plaintiff's alleged comparators in determining that plaintiff failed to state a claim for discrimination); *Caraway v. Sec'y, U.S. Dep't of Transp.*, 550 F. App'x 704, 709-710 (11th Cir. 2013) (same); *see also Drisin v. Fla. Int'l Univ. Bd. of Trustees*, 2017 WL 3505299, at *12 (S.D. Fla. June 27, 2017), *report and recommendation adopted*, 2017 WL 10398209 (S.D. Fla. Sept. 28, 2017).

### 1. *Plaintiff's Alleged Comparators*

Plaintiff has alleged the existence of three comparators, Chief Operating Officer Brian Beach, Director of Operations Steven Mathis, and Chief Pilot Hector Gonzalez. DE 89, p. 3 ¶ 23, p. 7 ¶¶ 46-47. The only factor that Plaintiff alleges qualifies these individuals as *similarly situated* comparators is the fact that they were management-level employees who, through the chain of reporting, had some ultimate responsibility for monitoring and mitigating overage, for which Plaintiff

had primary responsibility. This is woefully inadequate to establish the sufficiency of these comparators even at the motion to dismiss stage. [6]

> **2.    Plaintiff And Her Alleged Comparators Were Employed In Different Positions**

Courts have held that alleged comparators who are employed in different positions than the plaintiff are not similarly situated. *See Gilliam v. U.S. Dep't of Veterans Affs.*, 2017 WL 6344207, at *7 (M.D. Fla. Dec. 12, 2017) ("Where the proposed comparator works in a different department, has different job duties, answers to a different supervisor . . . then she is categorically not similarly situated 'in all relevant aspects' and thus 'not a proper comparator.'").

Beach was the COO of Amerijet (a C-level position), and Mathis was employed in a director-level position, while Plaintiff was merely a department manager. DE 89, p. 3 ¶¶ 16, 23. Moreover, Beach had responsibility "for all flight, maintenance and safety operations." DE 97-1, p. 3. A C-level executive and the Director of Operations at Amerijet are certainly not similarly situated "in all relevant aspects" such that they are "nearly identical" to Plaintiff, who was merely a department manager responsible for scheduling flight crews. *Edgerton v. City of Plantation*, 2015 WL 13311019, at *5 (S.D. Fla. 2015). Clearly, Beach and Mathis's positions had much larger portfolio and scope of responsibilities than Plaintiff.

---

[6] This, despite the fact that Plaintiff deposed Amerijet's former COO and Director of Operations, who are two of her three claimed comparators.

Similarly, Plaintiff alleges that Hector Gonzalez was Chief Pilot. DE 89, p. 3-4 ¶ 23. A pilot at an airline is a position vastly different from the Manager of the Crew Scheduling department. Plaintiff does not allege that she and Gonzalez were subject to the same standards or had the same job duties. Flying airplanes is a wholly different animal than scheduling flight crews. Plaintiff cannot compare herself – the manager of her own department – to an individual who ostensibly belongs to an entirely different department.

Moreover, the District Court recognized that Plaintiff's own allegations that Beach caused a hostile work environment, and that Beach sought documentation from Gonzalez and Mathis about Plaintiff's work affirmatively indicate that her alleged comparators had "materially different supervisory positions than Plaintiff." DE 122, p. 6; 89-3.

### 3. *Plaintiff And Her Alleged Comparators Did Not Share The Same Supervisor*

Plaintiff does not even allege in her SAC that any of her claimed comparators shared the same supervisor or identify the supervisors of her comparators. Instead, as discussed in the preceding section, Plaintiff's own allegations suggest that her comparators had supervisory authority over her. This is corroborated by Amerijet's Position Statement, which stated that Plaintiff reported directly to Mathis and Gonzalez, and reported indirectly to Beach. DE 97-1, p. 3.

In *Colas v. Lourdes-Noreen McKeen Residence for Geriatric Care, Inc.*, the Court dismissed a complaint alleging discrimination for failure to allege a sufficiently similarly situated comparator. 2021 WL 4896891, at *4 (S.D. Fla. Sept. 29, 2021). The plaintiff's alleged comparator in *Colas* was employed in the exact same position as the plaintiff, but the Court determined that plaintiff's failure to allege that both individuals reported to the same supervisor, had the same qualifications, had similar disciplinary histories, and exhibited the same conduct supported dismissal of her discrimination claims. *Id.*

In her Response to Amerijet's MTD ("Response"), Plaintiff attempted to cure her fatal pleading deficiency by arguing that she and the alleged comparators "shared [the same] ultimate supervisor" -- Amerijet's Chief Executive Officer Vic Karjian. DE 96, p. 7-8. Plaintiff never actually makes this allegation in her SAC, and therefore, this allegation should be disregarded. *See Pinkard v. Wal-Mart Stores, Inc.*, 2012 WL 5511039, at *2 n. 17 (N.D. Ala. Nov. 9, 2012) ("[F]or purposes of a motion to dismiss the court must consider only the contents of the complaint."). Plaintiff claims in her Response that paragraphs 45-49 and Exhibit 1 (DE 89-1) of her SAC allege that "the directive for reducing Overages is from the CEO to Plaintiff and the Comparators." DE 96, p. 7. However, those paragraphs and Exhibit 1 do not mention the CEO in any way; much less allege that he supervised Plaintiff or the

alleged comparators. DE 89, p. 7 ¶¶ 45-49; DE 89-1. Nowhere in Plaintiff's SAC does she allege whom Karjian directed to reduce overages, or whom he supervised.

Plaintiff is essentially arguing that everyone in Amerijet's organization is a potential comparator as they all ultimately reported to its CEO, directly or indirectly. If so, any plaintiff could argue that every employee of an organization – be they an executive, manager, co-worker, or low-level employee – is a comparator on the basis that the CEO is their ultimate shared supervisor. Such a threadbare basis for alleging the sufficiency of a comparator would render the comparator requirement a nullity.

### 4.   *Plaintiff And Her Alleged Comparators Did Not Engage In The Same Basic Conduct*

Plaintiff does not provide any factual allegations in her SAC to suggest that she and her alleged comparators engaged in the same basic conduct. Plaintiff tacitly recognized this point in her Response, where she argued that her purported comparators are similarly situated because "each of the comparators shared responsibility for the 'Overages', i.e. engaged in the same basic conduct." DE 96, p. 6. In other words, Plaintiff's *only* allegation that she and her comparators engaged in the same conduct is that they shared responsibility for overages.

This is a confusing argument because having a responsibility for something is not the same as engaging in similar conduct. Plaintiff's alleged comparators may well have adequately performed their share of overage responsibilities, whereas Plaintiff did not. Sharing *responsibility*, therefore, says nothing about the *conduct*

that Plaintiff and her alleged comparators engaged in. Plaintiff's position is akin to arguing that a pilot and an air traffic controller, who both share some responsibility for ensuring planes land safely, engaged in the same conduct because the pilot crashed the plane into the runway.

The fact of the matter is that according to her own allegations, overages were caused by having to pay flight crews extra for being scheduled to fly outside of their initial scheduled flights. DE 89, p. 3 ¶¶ 20-21. As the Crew Planning and Scheduling Manager, Plaintiff oversaw the department responsible for creating those crew schedules. *Id.* Clearly, Plaintiff had primarily responsibility for mitigating overages. She cannot meet her burden of alleging similarly situated comparators by claiming that individuals in other positions, who are clearly her superiors, and who are members of other departments, shared a responsibility with her that is a crew *scheduling* issue at its core.

Additionally, Plaintiff argues in her Brief that her alleged comparators could have had a disciplinary history no better than her history given that she had never before been written up. Appellant Brief, p. 34. However, this argument is undercut by Plaintiff's own allegations that she was written up four times in her final year of employment. DE 89, p. 4 ¶ 32. Plaintiff does not make any allegations that any of her alleged comparators were written up or disciplined in any way.

### 5.    *Plaintiff And Her Alleged Comparators Were Not Subject To The Same Employment Policy, Guideline, Or Rule*

Plaintiff does not provide any factual allegations in her SAC to suggest that she and her alleged comparators were subject to the same employment policy, guideline, or rule. Plaintiff attempted to overcome this deficiency by arguing in her Brief that she and her alleged comparators were subject to the "policy of minimizing Overages." Appellant Brief, p. 34.

Notably, Plaintiff does not make this allegation in her SAC, and therefore, this allegation should be disregard. What Plaintiff alleged in her SAC is merely that she and her comparators shared some responsibilities for mitigating overages, and not that they were subject to the same policy or guidelines. This is likely because Plaintiff cannot, in good faith, allege that she (a mid-level manager) was subject to the same policy or guidelines as the Company's COO (a C-level executive), Director of Operations (director-level position), or Chief *Pilot*.[7]

---

[7] In her Response to Amerijet's MTD, Plaintiff objected to Amerijet's contention that a pilot and a Crew Scheduling Manger are vastly different positions, despite the fact that she alleged in her SAC what were her duties and responsibilities as Crew Scheduling Manager. App. Doc. 96, p.172; App. Doc. 89, p. 114 ¶¶ 16-18. The Court must not shut its eyes to all objective inferences that can be drawn from Plaintiff's allegations. *In re W. Caribbean Airways Crew Members*, 2009 WL 899961, at *1 (S.D. Fla. Mar. 30, 2009) (citing *Jackson v. Okaloosa County, Fla*., 21 F.3d 1531, 1534 (11th Cir. 1994) ("When considering a motion to dismiss, the Court must consider the allegations contained in the plaintiff's complaint as true, and accept all reasonable inferences therefrom."). She has alleged that one of her comparators is a pilot. Pilots fly planes. Crew Scheduling Managers, based on Plaintiff's own allegations, do not.

27

Plaintiff's failure to allege the existence of any similarly situated comparators who were treated differently than she was is indicative of her failure to plausibly suggest that she was discriminated against on the basis of her race or gender.

**B.**  **Plaintiff Has Failed To Present Sufficient Factual Allegations Plausibly To Suggest Race Or Gender Discrimination**

Plaintiff fails to allege any additional facts sufficient plausibly to suggest that she was subjected to race or gender discrimination.

Aside from her comparator allegations, the only allegations that Plaintiff presents as suggesting discrimination are her purported allegations of pretext. For the reasons set forth below, none of those allegations suggest any pretext on the part of Amerijet, much less intentional discrimination based on race or gender.

*1.*  *There Is No Discrepancy In Amerijet's Stated Reasons For Terminating Plaintiff's Employment*

In her Response to Amerijet's MTD Plaintiff alleged, for the first time, that Amerijet created a discrepancy with respect to the stated reasons for her termination. DE 97, p. 9. Plaintiff did not make any such allegation in her SAC.

However, a close reading of the documents Plaintiff cites to reveal that no such discrepancy exists.

Plaintiff was informed via email by Amerijet that her position was not being eliminated, but rather, she was being terminated because Amerijet decided to make a change in her position. DE 89, p. 7 ¶ 44. Plaintiff further alleges that in its Position

28

Statement to the EEOC, Amerijet stated that it terminated Plaintiff's employment due to her inability to control overages. DE 89, p. 7 ¶ 45.

Amerijet decided to make a change in Plaintiff's position because she could not get overages under control, along with other performance issues. DE 89, p. 7 ¶¶ 44-45; DE 97-1, p. 4-8. These are not conflicting reasons. It is because of the significant performance issues cited in its Position Statement that Amerijet desired to make a change in Plaintiff's position. There is nothing contradictory, pretextual, or inconsistent about Amerijet's stated reasons. An employer with an employee displaying performance issues will want to make a change in the position.

It is confusing that Plaintiff asserts there is any discrepancy, because an actual discrepancy would be present had the *opposite* occurred. That is, had Amerijet told Plaintiff that it was *eliminating* her position, and then told the EEOC that it *terminated* her due to her performance, then there would be an inconsistency. Instead, Amerijet affirmatively told Plaintiff that it was <u>not</u> eliminating her position, but instead was making a change (i.e. hiring someone else to fill the position).

Even if there were an inconsistency, which there is not,Plaintiff does not provide any allegations whatsoever to suggest that it is tied to her race or gender. *See McKenzie v. EAP Mgmt. Corp.*, 40 F. Supp. 2d 1369, 1377 (S.D. Fla. 1999).

### 2. *Plaintiff's Positive Performance Evaluation Issued 17 Months Prior To Her Termination Is Not Evidence Of Pretext*

Plaintiff alleges in her SAC that a positive performance evaluation she received approximately one and a half years prior to her termination is evidence of pretext. DE 89, p. 7-8 ¶¶ 50-53. She also alleges that she received perfect scores in all the performance evaluations she received prior to that performance evaluation. DE 89, p. 8 ¶ 53.

It is difficult to ascertain how this suggests, in any way, intentional discrimination based on Plaintiff's race or gender. Importantly, Plaintiff alleges that she was issued four disciplinary write ups between August and September 2019, just three months prior to her termination, suggesting that her performance had suffered since her previous performance evaluation. DE 89, p. 4 ¶ 32, p. 8 ¶ 57.

Plaintiff fails to cite even a single case suggesting that a positive performance evaluation from 17 months prior to her termination is probative of pretext, particularly when there is evidence of poor performance occurring more recently. That is because the case law is clear - a positive performance evaluation even as recent as five months prior to an adverse employment action is insufficient to establish pretext. *See Dingman v. Delta Health Grp., Inc*., 26 F. Supp. 2d 1349, 1353 (S.D. Fla. 1998) (finding no pretext where an employee received a positive performance review 5 months prior to his termination, but the employee's

30

insubordination and unsatisfactory performance occurred in the period after such review); *Roberts v. Separators*, *Inc*., 172 F.3d 448, 453 (7th Cir. 1999) (a positive review and raise ten months prior to the adverse action does not indicate pretext in the face of performance issues occurring after the raise and review).

Moreover, this Court has held that positive performance reviews issued prior to a plaintiff demonstrating performance issues, as is the situation with Plaintiff in the instant case, should not be relied upon as evidence of pretext. *Walker v. St. Joseph's/Candler Health Sys., Inc.,* 506 F. App'x 886, 889 (11th Cir. 2013) (per curiam) (finding that a positive review "given before the complaints relied upon for [a] demotion began" are unhelpful in demonstrating pretext); *see also Howard v. Metro. Atlanta Rapid Transit Auth.*, 2016 WL 10988790, at *13 (N.D. Ga. July 14, 2016) ("[W]here an employer provides legitimate reasons for more recent negative reviews, mere evidence of past good performance does not demonstrate that the employer's legitimate non-discriminatory reasons cannot be believed") (citing *Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 729 (8th Cir. 2001) (noting that "[a]n employer may choose to rely on recent performance more heavily than past performance")).

The fact that Plaintiff received a positive evaluation nearly one and half years prior to her termination does not somehow absolve Plaintiff from performance issues that arose after that evaluation, and it certainly does not create an issue of pretext.

### 3.    There Is No Discrepancy Regarding Who Made The Decision To Terminate Plaintiff's Employment

Plaintiff alleges that there is a discrepancy regarding who made the decision to terminate her employment. DE 89, p. 9 ¶ 61. Plaintiff cites to an email that Amerijet's COO, Brian Beach, sent to someone with a GMAIL email account (i.e. not an Amerijet email account) stating "I got rid of Marcia, flight department is next but I need ETOPS first so I need to be careful who I fire at the moment." DE 89, p. 8 ¶ 60; Doc. 89-8. Plaintiff claims that this contradicts Amerijet's Position Statement, which indicated that its CEO Vic Karjian was the *final* decision-maker regarding Plaintiff's termination. DE 89, p. 8 ¶ 59. However, there is no such discrepancy.

First, Amerijet was very clear in its Position Statement regarding Beach's involvement in Plaintiff's termination. DE 97-1, p. 4-8. Amerijet clearly stated that Beach was frustrated with Plaintiff's inability to get overages under control or submit overage information, explained that Beach made it clear to Karjian that he was frustrated with Plaintiff's performance, and stated that Karjian made the decision to terminate Plaintiff "based in part on Mr. Beach's frustration." DE 97-1, p. 5-8.

With respect to Beach's email stating that "I got rid of Marcia," it is nothing more than the COO of Amerijet using "I" to refer to action the Company took rather than unnecessarily identifying the person who took such action. Doc. 89-8, p. 146.

For example, Beach might say "I" purchased a new airplane or "I" hired a new pilot rather than specifically referencing the actual person who made such purchase or hire. The individual with whom Beach is corresponding in the email does not have an Amerijet email, indicating that he is perhaps from outside Amerijet. Doc. 89-8, p. 146. There would therefore be no reason for Beach to mention that "I was very frustrated with Ms. McManus's performance and expressed such frustration to Mr. Karjian, but as CEO, Mr. Karjian made the ultimate decision on her termination." Instead he wrote that "I" (read: Amerijet) got rid of her.

Moreover, even if there were a discrepancy regarding who made the decision to end Plaintiff's employment, Plaintiff presents no evidence or allegation to suggest that such a discrepancy is tied to her race or gender in any way whatsoever. *See McLain v. Liberty Nat'l Life Ins. Co*., 2009 WL 10694914, at *13 (N.D. Ala. June 24, 2009), aff'd sub nom. *McLain v. Liberty Nat. Ins.*, 376 F. App'x 965 (11th Cir. 2010) (citations omitted).

### 4. *Beach's Remark Regarding Needing To Be Careful Who He Fires Had Nothing To Do With Plaintiff's Race Or Gender*

In her Brief, Plaintiff argues that in Beach's email "Beach wrote that he needed 'to be careful who I fire at the moment,' suggesting that he had cause to be concerned about facing legal liability for terminating [Plainitff]." Appellant Brief, p. 29.

33

However, Plaintiff cherry picked Beach's email to make it seem like his statement that "I need to be careful who I fire at the moment" was directly connected to his statement that "I got rid of Marcia."  Plaintiff conveniently left out the portion of the email that would reveal the true, non-discriminatory nature of his statements. Beach's email makes it clear that he needed to be careful who he fired because he needed Amerijet to obtain ETOPS certification, not because he was concerned about any legal liability regarding Plaintiff's termination:  "I got rid of Marcia, flight department is next **but I need ETOPS first so I need to be careful who I fire at the moment.**" (Emphasis added). DE 89-8, p. 146.

Clearly, Beach was considering terminations in *other departments*, and his desire to be careful with respect to who he fired in such other departments related to Amerijet's need to obtain ETOPS rather than anything related to race or gender.

### C.    <u>The District Court Did Not Err In Finding That Plaintiff Failed To State Claims For Race Or Gender Discrimination</u>

Plaintiff has failed to provide sufficient factual allegations to plausibly suggest that she was the victim of intentional discrimination based on her race or gender.

Plaintiff's SAC fails to allege a single fact that suggests she was discriminated on the basis of her race or gender other than the fact that she is Black or female. Plaintiff's position is that she was terminated because she is a Black female, but such conclusory statements are insufficient to meet her pleading standard. *Nurse v. City*

34

*of Alpharetta*, 775 F. App'x 603, 606 (11th Cir. 2019) (finding that conclusory allegations that Black police officers were subjected to more sever disciplinary actions than White officers, and that plaintiff was subjected to discriminatory treatment because of his race were insufficient to state a discrimination claim under Title VII.)

As explained above, the fact that three non-Black males were not terminated is not evidence of discrimination because Plaintiff failed to show that they were similarly situated comparators.

Furthermore, Plaintiff's alleged evidence of pretext do not actually show any pretext, for the reasons stated above.

Perhaps the most damning and revealing evidence is that which is missing – complaints of race or gender discrimination in the contemporaneous emails Plaintiff attached to her complaint. DE 89-2; DE 89-3. As explained in more detail below in Section VII, Plaintiff's contemporaneous emails sent while she was employed at Amerijet provide no inference or implication that she felt she was being discriminated against because of her race or gender. *Id.*

Courts have dismissed complaints that have provided substantially more allegations suggesting discrimination than Plaintiff has included in her SAC. *See, e.g., Arafat v. Sch. Bd. of Broward Cnty.*, 549 F. App'x 872, 874 (11th Cir. 2013) (dismissing race and gender discrimination claims where plaintiff alleged her

employer discriminated against her by paying her too little, reducing her work hours, issuing negative evaluations, terminating her employment, and refusing to let her attend a public job fair); *Misquith v. Palm Beach Cnty. Health Care Dist*., 2021 WL 8055475, at *7-8 (S.D. Fla. Sept. 29, 2021) (dismissing race and national origin discrimination claims where plaintiff alleged that: (1) his employer treated non-Indian employees more favorably by not subjecting them to discipline on pretextual bases; (2) did not subject non-Indian employees to termination of privileges without cause or explanation, or due process; (3) two Cuban-American doctors received due process during disciplinary proceedings that was not afforded to plaintiff; (4) plaintiff was replaced by a white doctor).

Plaintiff has failed to show any nexus between her race or gender and her termination, and has failed to alleged facts to plausibly suggest any intentional discrimination based on her race or gender. Accordingly, the District Court did not err in dismissing Counts I, II, IV and V of Plaintiff's SAC.

## VI. THE DISTRICT COURT DID NOT REQUIRE PLAINITFF TO PLEAD A PRIMA FACIE CASE OF DISCRIMINATION

In her Brief, Plaintiff argues that the District Court erroneously required her to plead a *prima facie* case of discrimination. Plaintiff's position is not supported by the District Court's Order.

The only evidence that Plaintiff points to in support of her position that the District Court erroneously required her to plead a *prima facie* case is that the District

Court analyzed the sufficiency of her alleged comparators. Appellant Brief, p. 30-33.

Plaintiff is confusing a strict application of the *prima facie* standard, which is not the standard the District Court applied, with merely utilizing the elements of the *prima facie* standard as a guide for determining whether Plaintiff has alleged sufficient facts to suggest intentional discrimination, which is permissible.

The District Court noted in its Order that Plaintiff was "not required to <u>plead</u> [*prima facie* elements] to survive dismissal." DE 122, p. 5. The District Court further noted that in order to plead a discrimination claim under Title VII, "a complaint need only 'provide enough factual matter (taken as true) to suggest intentional race [or gender] discrimination.'" *Id.* However, the District Court explained that "the *prima facie* claim elements can aid a court in organizing the allegations and identifying any material omissions at the pleading stage." *Id.*

Ultimately, the District Court found that *in addition* to failing to show that she was treated less favorably than a similarly-situated individual outside her protected class:

> Plaintiff also fails to allege with sufficient particularity that she was treated less favorably because of her race or gender. Plaintiff provides no clear examples of disparate treatment based or race or gender. Rather, Plaintiff broadly alleges that she was treated less favorably than the non-black and male employees because she was written up multiple times and terminated although she consistently received perfect scores on her Personnel Evaluations. However, the Court cannot reasonably infer that Plaintiff's race or gender played a role in her termination

37

simply because her previous performance evaluations were positive. Plaintiff also alleges that, although Beach, Gonzalez, and Mathis were equally responsible for the Overages issues that contributed to Plaintiff's termination, Defendant intentionally chose to only terminate Plaintiff because of her race and gender. Yet, Plaintiff alleges no facts suggesting that racial animus or Plaintiff's gender were motivating factors in Defendant's decision to terminate her.

DE 122, p. 222.

The central focus of the District Court's analysis of Plaintiff's allegations was whether, taken as a whole, they suggested intentional discrimination. It expressly held that "nothing in Plaintiff's complaint raises a plausible inference that Defendant discriminated against Plaintiff based on her race or gender." *Id.*

Nowhere in the District Court's Order does it state or imply that Plaintiff's SAC needed to establish all the elements of a *prima facie* case.[8]

### A.    Plaintiff Erroneously Argues That Analyzing The Sufficiency Of Alleged Comparators Is Improper At The Pleading Stage

In her Brief, Plaintiff cites to three cases in support of her argument that a complaint should not be dismissed based on the insufficiency of alleged comparators. Appellant Brief, p. 32-33 (citing *Alvarez v. Lakeland Area Mass Transit Dist.*, 406 F. Supp. 3d 1348, 1354 (M.D. Fla. 2019); *Gomez v. City of Doral*,

---

[8] Plaintiff does not argue in her Brief that the District Court erroneously applied the *prima facie* standard to her retaliation and whistleblower claims. In analyzing Plaintiff's retaliation and whistleblower claims, the District Court was guided by the standard of whether Plaintiff plausibly alleged unlawful retaliation, which is the appropriate standard. App. Doc. 122, p. 223-225.

2022 WL 19201, at *2 (11th Cir. Jan. 3, 2022); *Coleman v. C&S Wholesale Grocers, Inc.*, 2019 WL 13235811, at *6 (S.D. Fla. Aug. 26, 2019)). As stated above, the District Court did not dismiss the SAC merely because Plaintiff failed sufficiently to allege the existence of comparators.

However, Plaintiff nevertheless misstates the case law. All of Plaintiff's cited cases are superseded by <u>more recent binding</u> case law. *See Lacy v. City of Huntsville Alabama*, 2022 WL 303385, at *1 (11th Cir. Feb. 2, 2022); *see also Hernandez v. CareerSource Palm Beach Cnty., Inc.*, 2023 WL 4042012, at *3 (S.D. Fla. June 16, 2023) (dismissing sex discrimination claim where there were material differences between the plaintiff and the two alleged comparators she identified).

 In *Lacy*, this Court acknowledged that "[a]t the pleading stage... a plaintiff need not plead a *prima facie* case of discrimination." *Lacy*, 2022 WL 303385, at *4. Nevertheless, this Court affirmed dismissal of a Title VII sex discrimination claim for precisely the same reasons as the District Court in the instant case. Specifically, the *Lacy* Court affirmed dismissal of plaintiff's sex discrimination claim due to her failure to establish a valid comparator <u>and</u> her failure to "allege any other facts . . . from which the court could reasonably infer more than the mere possibility that the City discriminated against her because of her sex." *Lacy*, 2022 WL 303385, at *5.

This holding is nearly identical to the District Court's Order regarding Plaintiff's gender and race discrimination claims: "In the SAC, Plaintiff attempts to

39

use Beach, Mathis, and Gonzalez as comparators but alleges no facts to show that they are similarly situated in all material respects." DE 122, p. 221. "Altogether, the SAC does not include sufficient factual support to plausibly allege intentional race or gender discrimination. And nothing in Plaintiff's complaint raises a plausible inference that Defendant discriminated against Plaintiff based on her race or gender." *Id.*, p. 222.

## VII.   PLAINTIFF'S SAC FAILS TO STATE A CLAIM FOR RETALIATION

Counts III and VI of Plaintiff's SAC purport to set forth claims for retaliation under Title VII and the FCRA, respectively. DE 89, p. 11, ¶¶ 78-83; p. 14, ¶¶ 100-105.

To state a claim for retaliation, Plaintiff must allege sufficient facts to plausibly suggest that: (1) that she engaged in statutorily protected activity; (2) that she suffered an adverse employment action; and (3) that there is a causal relationship between the protected activity and the adverse employment action. *Candina v. Univ. of Miami*, 185 F. Supp. 3d 1343, 1351 (S.D. Fla. 2015) (citing *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998)).

Plaintiff has failed to state a claim for retaliation because she has not alleged sufficient facts to show that she engaged in statutorily protected conduct. Even if she did engage in protected conduct, she has failed to show any causal relationship between the protected activity and her termination.

### A.   **Plaintiff Has Failed To Allege Any Facts To Suggest That She Engaged In Protected Activity**

In order to establish that she engaged in protected activity, Plaintiff must allege facts showing that she opposed an unlawful employment practice. *Silver v. City of Pembroke Pines*, 2021 WL 4341736, at *5 (S.D. Fla. Sept. 5, 2021) (citations omitted). Importantly, Plaintiff "must establish a reasonable and good faith belief that the discrimination existed." *Candina v. Univ. of Miami*, 185 F. Supp. 3d 1343, 1351 (S.D. Fla. 2015). Indeed, the Eleventh Circuit has affirmed the dismissal of retaliation claims at the motion to dismiss stage based on a plaintiff's failure to show a reasonable and good faith belief that the activity she complained about constituted an unlawful employment practice. *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1388-89 (11th Cir. 1998).

### 1.   *Plaintiff's August 7, 2019 Email Is Not Protected Activity, And Her Subsequent Write Ups Are Not Evidence Of Retaliation*

Plaintiff alleges that on August 7, 2019, she emailed Amerijet's CEO, Vic Karjian, to request a meeting to discuss Karjian's disappointment with the Crew Scheduling department and the allegedly low morale within the department. App. Doc 89, p. 115 ¶¶ 27, 30; 89-2, p. 130. Plaintiff does not indicate in this email to Karjian that she is experiencing any form of unlawful discrimination or hostile work environment. The August 7, 2019 email, therefore, cannot qualify as protected activity, <u>nor does Plaintiff allege that it does</u>.

Plaintiff alleges that after requesting this meeting, Amerijet wrote her up four (4) times. DE 89, p. 4 ¶ 32; p. 8 ¶ 57. Plaintiff does not allege that she engaged in any protected activity prior to these write ups.

Since Plaintiff's August 7, 2019 email was not protected activity, the write ups cannot qualify as retaliation under Title VII. This is because there must be a causal relationship between protected activity and the adverse employment action. *Candina*, 185 F. Supp. 3d 1343 at 1351.

### 2.  *Plaintiff's September 8, 2019 Email Is Not Protected Activity*

The <u>only</u> instance of protected activity Plaintiff alleges she engaged in was the September 8, 2019 email she sent to human resources, in which she complained about the four (4) write ups. DE 89, p. 4-5 ¶¶ 33-35; DE 89-3. In the email, Plaintiff claims that she *and other managers* were experiencing a hostile environment at the hands of COO Brian Beach. DE 89-3. Nowhere in Plaintiff's email does she indicate, explicitly or implicitly, that she believes the hostile environment is due to her race or gender. In fact, Plaintiff specifically notes that one of the other managers who was experiencing a hostile environment was "Ed," who is ostensibly a male.[9]

---

[9] In her original Complaint and in her First Amended Complaint, Plaintiff provided a chart allegedly containing all the management-level employees who resigned or were terminated between 2017 and March 2021. DE 1, p. 13 ¶ 114; DE 37, p. 14 ¶ 124. Included in the chart is an individual named "Ed" who is listed as a white male. *Id.*

Rather than suggesting any kind of discriminatory environment, the few details that Plaintiff provides in the September 8 email regarding the alleged hostile behavior do not indicate any kind of unlawful discrimination. She claimed that: (1) Beach wrote her up after her August 7 meeting request; (2) Beach is passive aggressive and bullying; and (3) Beach did not show any appreciation to Plaintiff when she discovered an accounting error. DE 89-3.

Plaintiff also implies that Beach's behavior towards her could have been caused by the fact that she "decided to speak up about the incident with Steve a few months ago." *Id.* Plaintiff provided no allegations regarding any incident with Steve, or what she spoke out about. Moreover, Plaintiff explicitly stated in the email that "all your Managers feel they have a target on their heads." *Id.* Unless all the managers are Black females (something Plaintiff does not allege), Plaintiff's September 8 email cannot reasonably qualify as complaining about unlawful employment practices under Title VII or the FCRA.

Critically, none of the allegations detailed in Plaintiff's September 8 email can be tied to her race or gender in any way, nor did Plaintiff make any attempt to indicate she felt Beach's actions towards her were motivated by her race or gender. This is fatal to her retaliation claim since this email is the only instance of protected activity in which Plaintiff alleges she engaged. DE 89, p. 5 ¶ 35; p. 8 ¶ 54.

43

The case law is clear that "[c]omplaints to an employer only constitute protected activity under Title VII if they pertain to matters protected by the statute." *Quach v. Paragon Sys. Inc.*, 2015 WL 13719674, at *7 (N.D. Ga. Oct. 28, 2015) (citing *Sridej v. Brown*, 361 Fed. App'x. 31, 35 (11th Cir. 2010) (citations omitted); *see also Satchel v. Sch. Bd. of Hillsborough Cnty*., 251 F. App'x 626, 628 (11th Cir. 2007). "It is not enough for the employee merely to complain about a certain policy or certain behavior of co-workers and rely on the employer to infer that discrimination has occurred." *Finch v. Morgan Stanley & Co. LLC*, 2016 WL 4248248, at *6 n. 5 (S.D. Fla. Aug. 11, 2016) (citation omitted).

In *Satchel*, this Court held that a plaintiff's complaint of harassment by a co-worker did not constitute protected activity because the complaint failed to show "any relationship to race or otherwise indicate that the [employer] was engaged in unlawful employment practices." *Satchel*, 251 F. App'x 626, 628 (11th Cir. 2007). The Court upheld the District Court's dismissal of the plaintiff's retaliation claim on this ground. *Id.*

In *Quach*, the Court held that "despite the fact that plaintiff mentions complaining of a hostile work environment . . . he has failed to adequately state a retaliation claim because he has not alleged any factual basis for finding that his complaint was related to protected categories under Title VII[.]" *Id.* (citing *Canty v. Fry's Elecs., Inc*., 2012 WL 1038619, at *9 (N.D. Ga. Feb. 12, 2012) ("While

[p]laintiff uses buzz words, such as hostile work environment ... to describe his former complaints to management.... [p]laintiff's complaints to management do not suggest any discrimination on the basis of race, color, or any other classification protected by Title VII[.]"); *see also Wells v. Miami Dade Cnty*., 2016 WL 7492560, at *6 n. 8 (S.D. Fla. Dec. 30, 2016) (finding that the plaintiff's "retaliation claim is flawed because she ... complained internally that she had been treated unfairly by [a manager] without explaining why she thought he was mistreating her"); *Williams v. Gallup, Inc*., No.1:15-CV-02650-WSD-WEJ, 2016 WL 10655518, at *15 (N.D. Ga. Sept. 15, 2016) (finding that plaintiff's complaint of being "treated differently" did not constitute protected activity where he did not "assert that any difference in treatment was based on his gender or race").

Plaintiff has failed to allege any facts showing she engaged in protected activity under Title VII or the FCRA, and therefore, the District Court did not err in dismissing Counts III and VI of Plaintiff's SAC.

### B.    Plaintiff Has Failed To Allege Any Facts To Suggest Any Causal Relationship Between Her Alleged Protected Activity And Her Termination

Plaintiff fails to plausibly suggest any causal connection between her alleged protected activity and her termination except for her boilerplate conclusory allegation that there was temporal proximity between her September 8, 2019 email

and her December 18, 2019 termination, a period of just over three months.[10] DE 89, p. 8 ¶¶ 54-56.

The Eleventh Circuit has held that even a three-month gap between statutorily protected activity and adverse employment action is insufficient to establish retaliation, even at the motion to dismiss stage. *Henderson v. City of Birmingham, Alabama*, 826 F. App'x 736, 742 (11th Cir. 2020) (citation omitted); *see also Reed v. Forney Indus., Inc.*, 800 F. App'x 782, 789 (11th Cir. 2020) (citing *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) (holding that a three-month gap between the protected action and alleged retaliation was not sufficiently proximate to show causation).

Temporal proximity is the only factual allegation in the SAC suggesting any causal connection between her alleged protected activity and her termination. Therefore, even assuming Plaintiff has sufficiently established that her September 8, 2019 email is protected activity, she has failed to allege enough facts to suggest a causal connection between her alleged protected activity and her termination.

Accordingly, the District Court did not err in dismissing Counts III and VI of Plaintiff's SAC.

---

[10] Plaintiff also alleges that the write-ups she received after her August 7, 2019 email requesting a meeting with Mr. Karjian constitute evidence of retaliation. App. Doc. 89, p. 119 ¶ 58. However, as explained in the preceding section, her write ups cannot, as a matter of law, constitute retaliation under Title VII or the FCRA.

## VIII. PLAINTIFF'S SAC FAILS TO STATE A CLAIM UNDER FLORIDA'S PRIVATE SECTOR WHISTLEBLOWER ACT

Count VII of Plaintiff's SAC purports to set forth a claim under the FWA. DE 89, p. 15, ¶¶ 106-117. To state a claim under the FWA, Plaintiff must allege sufficient facts to show that (1) that she engaged in statutorily protected activity; (2) that an adverse employment action occurred; and (3) that there was a causal link between the protected activity and the adverse employment action. *Martinez v. Goodwill Indus. of S. Fla., Inc*., 2011 WL 13217232, at *3 (S.D. Fla. Apr. 1, 2011).

To show that she engaged in statutorily protected activity, Plaintiff must show that she objected to an ***actual*** violation of a law, rule or regulation. *See* Fla. Stat. § 448.102(3); *Kearns v. Farmer Acquisition Co.*, 157 So. 3d 548, 465 (Fla. 2d DCA 2015) (stating that under section 448.102(3) a party must prove that they "objected to an actual violation of law"); *Pierre v. AIDS Healthcare Found., Inc.*, 2020 WL 6381557, at *4 (S.D. Fla. Oct. 30, 2020); *Kattell v. Brenntag Mid-south, Inc*., 2019 WL 13143000, at *6 (M.D. Fla. June 11, 2019).

The pleading requirements to state a claim under the FWA are, therefore, very similar to the standard for establishing a claim for retaliation under Title VII and the FCRA. Accordingly, for the same reasons explained in Section VII.A above, Plaintiff has failed to state a claim under the FWA because she has not established that she has engaged in protected activity.

Plaintiff falls far short of showing that she objected to a violation of law because her September 8, 2019 email, which she alleges constitutes her only protected activity, does not state or even imply that she was being discriminated against on the basis of her race or gender. Being subjected to a hostile work environment is not in and of itself illegal – it is only where an employee is subject to such an environment on the basis of their membership in a protected class that a violation of Title VII or the FCRA has occurred. *See Canty,* 2012 WL 1038619, at *9 (N.D. Ga. Feb. 12, 2012).

Even if Plaintiff could show that she engaged in protected activity, for the same reasons explained in Section VII.B above, Plaintiff has failed to show any causal connection between the September 8, 2019 email and her termination.

Accordingly, the District Court did not err in dismissing Count VII of Plaintiff's SAC.

## A.    The "Actual Violation" Standard Is The Appropriate Standard Under Florida Law

Some courts in Florida have held that a plaintiff stating a claim under the FWA need only show that she had a good faith, objectively reasonable belief that an employer violated the law. *See Aery v. Wallace Lincoln-Mercury, LLC,* 118 So. 3d 904, 916 (Fla. 4th DCA 2013). Notably, the decision in *Aery* was issued before the decision in *Kearns*, and as an appellate sister court, does not bind or supersede the decision in *Kearns.*

48

The decision in *Pierre* is both persuasive and appropriately deferential to the clear meaning of the FWA statute regarding the appropriate standard, noting that "[t]he plain text of [the FWA] unambiguously states that an employer's activity, policy, or practice must be 'in violation of a law, rule, or regulation.' . . . There is no ambiguity surrounding the words "in violation of"; the phrase simply carries an ordinary meaning, just as *Kearns* held." *Id*.

The *Pierre* Court held that were it to follow the *Aery* court, "it would have to insert words like 'alleged' or 'suspected' into Section 448.102(3). But this Court is not in the business of re-writing statutes—that is the job of the democratically-elected Florida legislature." *Id.*

**B.** **Despite A Split In The Florida Courts Regarding Whether A Plaintiff Is Required To Show An "Actual Violation" Or A "Reasonable Belief" Plaintiff Fails To Meet Either Standard**

Plaintiff would fail to meet even the "reasonable, good faith belief" standard because she must have an *objectively* reasonable belief that a violation of law occurred. *See Aery v. Wallace Lincoln-Mercury, LLC*, 118 So. 3d 904, 916 (Fla. 4th DCA 2013); *Tillman v. Advanced Pub. Safety, Inc*., 2016 WL 11501680, at *4 (S.D. Fla. Nov. 14, 2016).

As discussed in preceding sections, Plaintiff's September 8, 2019 email, which is her only claimed instance of protected activity, does not suggest that any unlawful discrimination took place.

## IX. THE DISTRICT COURT DID NOT ERR IN DISMISSING PLAINTIFF'S SAC WITH PREJUDICE

A district court's decision to dismiss a complaint with prejudice is reviewed under an abuse of discretion standard. *See McDonough*, 2023 WL 3035215 , *4 (11th Cir. Apr. 21, 2023); *Tran*, 817 F. App'x 911, 915 (11th Cir. 2020); *Eiber,* 673 F. App'x 925, 927 (11th Cir. 2016) (citation omitted).

This Court has held that plaintiffs should be granted "at least one chance to amend its complaint before dismissing the action with prejudice." *Eiber Radiology, Inc.* 673 F. App'x 925, 929 (citation omitted). However, the *Eiber* court noted that this Court has "never required district courts to grant counseled plaintiffs more than one opportunity to amend a deficient complaint." *Id.* at 930.

In the instant case, the District Court did not abuse its discretion in dismissing Plaintiff's SAC with prejudice. Plaintiff's SAC was her third operative complaint, and the District Court had provided her with two opportunities to amend her complaint to cure substantive pleading deficiencies. As of the filing of her SAC, discovery had been closed, and therefore Plaintiff had all the necessary facts at her disposal. Nevertheless, she was unable to plead sufficient facts to state her claims. The District Court was well within its discretion in determining that any further amendments would be futile.

In her Brief, Plaintiff mischaracterizes the District Court's Order and the procedural history in this case in an attempt to resuscitate her lawsuit from fatal pleading deficiencies.

### A.    The District Court's Order Dismissing Plaintiff's SAC With Prejudice

Plaintiff's Brief claims that that the District Court "made clear that it premised its dismissal with prejudice on the erroneous belief that [Plaintiff] had had three opportunities to correct the errors it identified but failed to do so." Appellant Brief, p. 36. However, the District Court made no such pronouncement. In fact, Plaintiff's own brief quoted the District Court's Order, in which it stated that it was dismissing Plaintiff's SAC based on the fact that Plaintiff had "the benefit of extensive discovery" *as well as* the fact that Plaintiff had been given multiple "opportunities to amend her complaint and cure any pleading deficiencies." *Id.*

The District Court's Order did not "erroneously" announce that Plaintiff had been given multiple opportunities to correct the errors the District Court had identified in Plaintiff's SAC. It merely recognized that Plaintiff had been given multiple opportunities to amend her complaint to cure pleading deficiencies. A review of the procedural history in this case reveals that this is precisely what occurred – the District Court had indeed given Plaintiff opportunities to cure *substantive* pleading deficiencies.

### 1.    The District Court's Order Dismissing Plaintiff's Original Complaint

The District Court's paperless order dismissing Plaintiff's original complaint did in fact dismiss Plaintiff's complaint as a shotgun pleading, as Plaintiff pointed out in her Brief. DE 29. However, Plaintiff argues that the District Court's paperless order had not determined that there were any "substantive deficiencies in Plaintiff's pleading of her claims." Appellant Brief, p. 36. This is not accurate. The order noted that "each count" of Plaintiff's original complaint was "replete with conclusory recitations of the elements" of her claims. *Id.* This is clearly a substantive deficiency.

Moreover, Plaintiff did not cite to any case law to support the argument that a court should not take into account opportunities to amend complaints that amount to a shotgun pleading when determining whether a plaintiff should be given additional opportunities to amend. Importantly, this was <u>not</u> the only opportunity the District Court provided Plaintiff to amend her complaint to cure deficiencies.

### 2.    Plaintiff's Motion To Amend Her FAC

Plaintiff filed her first Amended Complaint on June 9, 2022. DE 37. On June 23, 2022, Amerijet filed its Motion to Dismiss Plaintiff's Amended Complaint, arguing that Plaintiff failed to state a claim on 13 of the 15 counts she asserted. DE 42. The basis of Amerijet's motion, therefore, was that Plaintiff's FAC was replete with substantive pleading deficiencies.

On January 2, 2023, prior to the District Court ruling on Amerijet's Motion to Dismiss Plaintiff's FAC, Plaintiff filed a motion seeking leave of Court to file her Second Amended Complaint – her third complaint in this litigation ("Motion to Amend"). DE 82. Due to the fact that the deadline to amend pleadings was December 2, 2021, which had passed 13 months prior, Plaintiff's Motion to Amend requested a deviation from the District Court's scheduling order. DE 82, p. 4.

In her Motion to Amend, Plaintiff recognized that Amerijet had filed a motion to dismiss her FAC. DE 82, p. 1 ¶ 4. Critically, Plaintiff argued to the District Court that "the Court should grant leave because [Plaintiff's] SAC resolves all of the issues raised in [Amerijet's] Motion."  DE 82, p. 2 ¶ 8. Plaintiff further argued in her Motion to Amend that "the SAC seeks to cure alleged defects in the operative Complaint raised in Defendant's Motion." DE 82, p. 5.

Indeed, Plaintiff noted in her Motion to Amend that a "significant basis for seeking amendment" was the fact that she had conducted multiple depositions of key witnesses, which presented testimony regarding key issues in the case. DE 82, p. 4.

Clearly, Plaintiff's desire and justification for amending her FAC was to cure the significant *substantive* pleading deficiencies outlined in Amerijet's Motion to Dismiss her FAC by pleading additional facts. It was one of the central reasons she presented to the District Court for allowing her to amend her FAC after the deadline for amending pleadings had been expired for more than one year.

The fact that Plaintiff recognized the *substantive* pleading deficiencies and sought to cure them before the District Court reached the very same conclusion on its own does not somehow negate the fact that the District Court gave Plaintiff an opportunity to amend to cure substantive pleading deficiencies. It is therefore inaccurate for Plaintiff to claim, as she does in her Brief, that she never had the opportunity to correct deficiencies in pleading her substantive claims prior to the District Court's Order dismissing her SAC with prejudice.

### B.    The District Court's Did Not Abuse Its Discretion In Dismissing Plaintiff's SAC With Prejudice

This Court has made it has "never required district courts to grant counseled plaintiffs more than one opportunity to amend a deficient complaint." *Eiber Radiology, Inc.* 673 F. App'x at 930.

The District Court provided Plaintiff two opportunities to amend deficient complaints. Plaintiff has not presented any arguments to suggest that the District Court abused its discretion in refusing to allow her a third opportunity. As the District Court noted in its Order, when Plaintiff filed her SAC, discovery in this case had closed. In fact, a major argument in Plaintiff's Motion to Amend to file her SAC had been the fact that she had conducted extensive discovery.

At the time she filed her SAC, Amerijet produced nearly 6000 pages of documents to Plaintiff, Amerijet had deposed Plaintiff and Plaintiff had deposed five key current and former employees of Amerijet, including its former CEO, former

COO, former Vice President of Human Resources, former Director of Operations, and its then-current Chief Human Resources Officer.

With discovery completed, and all the relevant facts and testimony at Plaintiff's disposal, Plaintiff's SAC, her third operative complaint, should have contained sufficient alleged facts to meet the applicable pleading standard. However, Plaintiff failed to do so, as argued in Amerijet's Motion to Dismiss Plaintiff's SAC. DE 90.

The fact that it did not is indicative that it would be a futile waste of judicial resources as well as the resources of the parties to provide Plaintiff more opportunities to cure her pleading deficiencies.

## X.    CONCLUSION

For the reasons set for the above, this Court should affirm the District Court's Order dismissing Plaintiff's SAC with prejudice.

Dated: March 5, 2024

Respectfully submitted,

STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
Museum Tower, Suite 2200
150 West Flagler Street
Miami, FL 33130
Telephone: (305) 789-3200
Facsimile:  (305) 789-3395

By: /s/ *Paul Crucet*　　　　　　　
　　PAUL CRUCET, ESQ.
　　Florida Bar No.: 122169
　　E-Mail: pcrucet@stearnsweaver.com
　　ROBERT S. TURK, ESQ.
　　Florida Bar No.: 261343
　　E-Mail: rturk@stearnsweaver.com

　　*Attorneys for Appellee,*
　　*Amerijet International, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned attorney certifies that this document complies with the type volume limitation contained in Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 12,889 words, excluding the parts exempted by Fed. R. App. P. 32(f).

The undersigned attorney further certifies that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionately spaced typeface using Microsoft Word in Times New Roman 14-point font.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on March 5, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

*/s/ Paul Crucet*
PAUL CRUCET, ESQ.

## SERVICE LIST

### *MARCIA MCMANUS v. AMERIJET INTERNATIONAL, INC.*
### CASE NO.: 0:21-cv-61617-DPG/JMS

Daniel A. Bushell, Esq.
Florida Bar No. 43442
dan@bushellappellatelaw.com
Bushell Law, P.A.
1451 W. Cypress Creek Rd., Suite 300
Fort Lauderdale, FL 33309
Telephone: (954) 666-0220
*Co-counsel for Appellant*

Michael L. Elkins, Esq.
Florida Bar No. 523781
melkins@mlelawfirm.com
MLE LAW
1212 Northeast 16th Terrace
Fort Lauderdale, FL 33304
Telephone: (954) 401-2608
*Co-counsel for Appellant*

Joshua M. Entin, Esq.
Florida Bar No. 0493724
josh@entinlaw.com
ENTIN LAW GROUP, P.A.
633 S. Andrews Avenue, Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 761-7201
*Co-counsel for Appellant*

*Attorneys for Appellant*

*Served Via CM/ECF*